UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Angelika P., for herself and as
guardian and next friend of N.P.,
an incapacitated adult,
     Plaintiffs

     v.                                 Case No. 19-cv-1114-SM
                                         Opinion No. 2021 DNH 140

Town of Meredith,
     Defendant

## O R D E R

The issues raised in the legal memoranda filed in support of and in opposition to summary judgment give rise to nuanced questions of law and fact.  Having considered the matter in some depth, the court is of the view that oral argument would be helpful in determining whether some facts are potentially material, and if so, whether a genuine dispute exists with respect to those facts.  Resolution of the pending motion, either as it currently stands or as supplemented, will likely resolve the case, either because plaintiff cannot state a valid ADA claim, or, because defendant is plainly liable under the ADA for disability discrimination.

For counsels' convenience and consideration in preparing for a hearing, they are referred to the following law review article, which, while dated, fairly outlines the split in legal

1

authority applicable in this case:  Timmons, "Accommodating
Misconduct Under the Americans With Disabilities Act," 57 Fla.
L. Rev. 187 (2005).  The court anticipates productive argument
related to the following specific matters, and any related
questions that counsel might deem significant.  Counsel are
urged to confer before the hearing and endeavor in good faith to
stipulate to identified (and related) factual matters about
which there is no genuine dispute.

1.   Did the Town decision makers assess the threatening
     words N.P. reportedly used in an effort to gauge
     whether those words constituted either a "serious" or
     a "credible" threat (or both)?  Is there evidence in
     this record of that assessment and the conclusion(s)
     drawn?

2.   Did the Town decision makers know, or should they have
     known, that N.P. uttered identical, similar, or
     analogous threatening words during his previous camp
     sessions, as Angelika P. contends?

3.   Did the Town, in past camp sessions, effectively
     modify its camp program in a way that tolerated or
     responded differently to similar utterances by N.P. in
     light of N.P.'s developmental and intellectual
     disabilities?  That is, were means other than
     suspension/dismissal used to correct or mitigate the

potential effects of such conduct in prior camp

sessions?  Is there record evidence of such action, in

addition to statements to that effect by Angelika P.?

If such action was taken, was it sufficient, from the

Town's perspective, to permit N.P.'s continued

participation?  If such modifications were made and

were sufficient, was Angelika P. advised at any time

before N.P.'s suspension/dismissal at issue here that

such modifications to the camp program would no longer

be implemented?

4.   Did the Town decision makers assess the seriousness

or credibility of the threat represented by the words

reportedly uttered by N.P. in the context of his

alleged six-year-old intellectual and emotional

developmental level?

5.   Did the Town decision makers assess the seriousness or

credibility of the threat represented by the words

reportedly uttered by N.P. in the context of his

biological age or his physical size?

6.   Have other campers in the program, aged six, or

approximately aged five to ten years, and who were not

intellectually or developmentally disabled, uttered

words that were identical to, similar, or analogous to

those reportedly uttered by N.P.?  If so, were similar
sanctions imposed?

7.    Is it necessary for a jury to first determine whether
the Town decision makers (or a "reasonable person")
could have fairly concluded that the words reportedly
uttered by N.P. amounted, in context, to an actual
threat (as opposed to, say, typical childish banter,
such as "I'll kill you [sibling] if you tell Mom I ate
the cookie!"), before it can be determined as a matter
of law whether N.P. could have been
suspended/dismissed from the program without violating
the provisions of the ADA?  If so, is summary judgment
then necessarily precluded by the existence of a
genuine dispute as to a material fact?

8.    Is it necessary for a jury to first determine whether
the Town decision makers (or a "reasonable person"}
could have fairly concluded that the words reportedly
uttered by N.P. constituted a serious, or credible, or
serious and credible threat, before it can be
determined whether N.P. could have been
suspended/dismissed from the program for uttering
those words, without violating the provisions of the
ADA?

9.   On this record, can the court find, as a matter of
     law, that, in context, no reasonable person could have
     fairly concluded that the words uttered by a long-time
     camper in the Town's program, with known intellectual
     and developmental disabilities, and a developmental
     age of approximately six years, constituted either an
     actual threat, or a serious and/or credible threat,
     comparable to those threats made by employees
     described in case precedent in some jurisdictions that
     recognize the distinction under the ADA between
     discipline imposed for "making a threat" and
     discipline imposed for "posing a threat?"  That is,
     even if the Town could suspend/dismiss a camper for
     "making" a threat without considering whether the
     camper "poses a threat" under the ADA, to avoid
     liability under the ADA, must the alleged threat
     actually constitute a "threat" and not amount to a
     mere six-year-old's childish emotional outburst?
     Relatedly, is N.P.'s developmental age or biological
     age the controlling factor?  Would such a finding
     necessarily preclude summary judgment for the Town and
     entitle plaintiff to summary judgment?

10.  Is the Town asserting the defense that N.P. posed a
     "direct threat" within the meaning of the ADA?  Did

the Town decision makers assess that asserted threat by considering the factors outlined in the regulations implementing the ADA?  Or, is the Town relying exclusively on the "made a threat" ground rather than the "posed a threat" ground to justify its imposition of discipline?

11. The Rehabilitation Act arguments are unclear, or, perhaps better put, the bases for those arguments are unclear.  Does the plaintiff dispute the fact that the so-called "Fire Act Grant" provided the Town with federal funds earmarked for and exclusively used by the Town to acquire a fire truck for the Town's Fire Department?  Are the grant's terms disputed?  (Neither party filed the grant as an exhibit, but presumably its terms are not the subject of any material factual dispute.)

The trial date currently scheduled in this case is continued.  Trial will be rescheduled, if necessary, after the pending dispositive motion is resolved.  Anticipating that all material facts are, in the end, unlikely to be genuinely disputed, this case appears to be one that can be resolved by applying the pertinent law, as it is determined to be, to those undisputed material facts.  It may be, however, that the record is insufficiently developed to permit summary disposition, but

6

that additional discovery could prove useful in resolving any assertions of a genuine dispute regarding a material fact.

The clerk will schedule oral argument on the pending motion for summary judgment as the docket allows, preferably in the last week of September, 2021. Counsel should confer with each other and then Deputy Clerk Wagner to schedule a convenient time if the proposed scheduling is not convenient.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 2, 2021

cc:  Sheila O'Leary Zakre, Esq.
     Dona Feeney, Esq.